NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-1869 and 10-2085
_____

GEORGE KONTONOTAS
Appellant No. 10-2085

v.

HYGROSOL PHARMACEUTICAL CORPORATION;
SPIRO SPIREAS; SANFORD BOLTON,

Hygrosol Pharmaceutical Corporation,
Appellant No. 10-1869
_____

Appeals from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-07-cv-04989)
District Judge: Honorable Jacob P. Hart
_____

Argued March 14, 2011

Before: RENDELL, BARRY and CHAGARES, <u>Circuit</u> <u>Judges</u>

(Filed: April 21, 2011 )
_____

Steven A. Haber, Esq.
James E. Kurack, Esq.
Obermayer, Rebmann, Maxwell & Hippel
1617 John F. Kennedy Boulevard
One Penn Center, 19th Floor
Philadelphia, PA 19103

Dorothy A. Hickok, Esq.    [ARGUED]
Alfred W. Putnam, Jr., Esq.
Drinker, Biddle and Reath
18th & Cherry Streets
One Logan Square
Philadelphia, PA  19103

Nick S. Williams, Esq.
Sondhi Williams
420 Lexington Avenue
Suite 300
New York, NY  10170
   *Counsel for Appellee/Cross Appellant*
   *Hygrosol Pharmaceutical Corporation*

Joseph M. Fioravanti, Esq.
217 North Monroe Street
P.O. Box 1826
Media, PA  19063

Thomas D. Schneider, Esq.
55 Green Valley Road
Wallingford, PA 19086

Eugene J. Malady, Esq.    [ARGUED]
Suite 309
200 East State Street
Media, PA  19063
   *Counsel for Appellant/Cross Appellee*
   *George Kontonotas*

_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

Following a bench trial, the District Court for the Eastern District of Pennsylvania

held that Hygrosol Pharmaceutical Corporation was obligated to pay broker George

Kontonotas $1,689,062.93 under a quantum meruit/unjust enrichment theory.  The

2

District Court awarded Kontonotas an additional $310,050.01 in prejudgment interest, for a total final award of $1,999,112.94. It also denied Hygrosol's request for attorney's fees.[1]

On appeal, Hygrosol makes three central claims. First, it argues that New York law[2] does not permit a quasi-contract/unjust enrichment award here, because an enforceable, binding agreement existed between the parties. Next, it contends that, even if such an action were permissible, it was barred by New York's six-year statute of limitations for unjust enrichment claims. Finally, Hygrosol claims it is entitled to attorney's fees based on its "prevailing party" status in Kontonotas's breach of contract claim. On cross-appeal, Kontonotas claims that the District Court erred in applying Pennsylvania's, instead of New York's, statutory rate to calculate prejudgment interest. We will affirm the District Court's orders as to the statute of limitations, the propriety and amount of the quantum meruit award, and Hygrosol's request for attorney's fees. We will remand in order for the District Court to calculate prejudgment interest according to New York law.

---

[1] The District Court issued these rulings in three separate orders. It had subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and we have jurisdiction over this appeal of a final order under 28 U.S.C. § 1291.

[2] The parties do not dispute the District Court's determination that New York law applies to Kontonotas's quantum meruit claim.

3

A.

Kontonotas had a Broker's Agreement with Hygrosol providing that he would be compensated if he secured contracts for the use of Hygrosol's "liquisolid" technology[3] in health and nutritional products. After arranging an introduction between Hygrosol and Mutual Pharmaceutical Company – the result of which was a License Agreement between the two companies for the development of pharmaceutical products – and not receiving any payment, Kontonotas sued Hygrosol alleging breach of contract or, in the alternative, quantum meruit/unjust enrichment. He sought a percentage of the profits that had accrued to Hygrosol from the sales of three generic pharmaceutical drugs it developed with Mutual.

Following a bench trial, the District Court found that Hygrosol had no contractual obligation to pay Kontonotas. It found that the scope of the Broker's Agreement between Kontonotas and Hygrosol was limited to health/nutritional products and did not reach pharmaceutical products. However, it held that Hygrosol was liable to Kontonotas based on a theory of quantum meruit/unjust enrichment because: (1) Kontonotas rendered a service to Hygrosol in good faith by introducing it to Mutual; (2) Hygrosol accepted that service when it entered into a Licensing Agreement with Mutual; (3) Kontonotas had a

---

[3] "Liquisolid" technology, which was developed by Hygrosol founder Spiro Spireas, eases the assimilation of an active pharmaceutical ingredient into the bloodstream by making it more water-soluble. The technology has the potential to make a drug safer and more effective, and it is a cost-saver for drug manufacturers since less of the drug's active ingredient is required when the technology is used.

4

reasonable expectation of compensation for the service; and (4) the evidence was sufficient to demonstrate the value of Kontonotas's service – as calculated by the District Court, 1.25% of the approximately $141 million Hygrosol earned as a direct result of the introduction. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 509 (2d Cir. 2009).

In analyzing Kontonotas's unjust enrichment claim, the District Court relied, at the outset, on a letter from Spiro Spireas, founder and President of Hygrosol, to Kontonotas in which Spireas recognized Kontonotas's contribution in forging a connection with Mutual and promised a "fair commission for [Kontonotas's] efforts" should Hygrosol and Mutual enter into a deal. The Court also looked to a handwritten note from Spireas to Dr. Richard Roberts, President of Mutual, in the margins of a draft of the Hygrosol-Mutual Licensing Agreement. It interpreted the note to represent an acknowledgment on the part of Hygrosol that Kontonotoas was ethically entitled to benefit from Hygrosol's deal with Mutual. The District Court did not credit Spireas's testimony that he was only thinking of nutritional products when he wrote this note. The document on which the note was written, the Court pointed out, pertained only to pharmaceutical products.

In a later order, the District Court set the value of Kontonotas's prejudgment interest award at $310,050.01, calculated at Pennsylvania's rate of 6% simple interest, *see* 41 Pa. Stat. Ann. § 202, to bring Kontonotas's total award to $1,999,112.94. It relied on *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1264-65 (3d Cir. 1991), for its decision to apply Pennsylvania law, instead of New York law, to the calculation of the prejudgment interest award.

5

Finally, in an order denying Hygrosol's Rule 52 Motion for Reconsideration, the District Court denied Hygrosol's request for attorney's fees and rejected Hygrosol's argument that the statute of limitations had run on Kontonotas's unjust enrichment claim. Section 2.2 of the Kontonotas-Hygrosol Broker's Agreement, the Court found, did not entitle Hygrosol to attorney's fees for "prevailing" on Kontonotas's breach of contract claim. On the statute of limitations, the District Court held that Kontonotas's claim was subject to equitable tolling based on Hygrosol's fraudulent concealment of the profits it was earning from its deal with Mutual. The Court found that Kontonotas's complaint alleged with particularity all elements of fraudulent concealment so as to satisfy the requirements of Fed. R. Civ. P. 9(b): Kontonotas had alleged that, between 1998 and 2005, he communicated with Spireas concerning the progress of Spireas's projects at Mutual; that Spireas repeatedly assured Kontonotas that he would compensate him for products Spireas developed for Mutual "when the right time comes"; that he did not learn until the spring of 2005 that Hygrosol was benefitting from hundreds of millions of dollars in sales of products developed by Mutual with Hygrosol; and that he subsequently requested payment from Hygrosol. Judge Hart found Kontonotas's allegations and testimony with regard to these events to be credible and, accordingly, held that the statute of limitations did not begin to run until sometime in the spring of 2005.

B.

We apply a *de novo* standard of review to the district court's legal conclusions, *Brisbin v. Superior Value Co.*, 398 F.3d 279, 285 (3d Cir. 2005), and we review the

6

district court's factual findings for clear error. *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 257-58 (3d Cir. 2008). Under the clear error standard, we must accept the trial court's factual determinations unless they are either (1) "completely devoid of minimum evidentiary support displaying some hue of credibility," or (2) "bear[] no rational relationship to the supportive evidentiary data." *Haines v. Ligett Grp., Inc.*, 975 F.2d 81, 92 (3d Cir. 1992). We have held that interpreting an ambiguous contract to discern the parties' intent is a question of fact and, accordingly, is subject to review under a clear error standard. Fed. R. Civ. P. 52(a); *John F. Harkins Co., Inc. v. Waldinger Corp.*, 796 F.2d 657, 659-60 (3d Cir. 1986). A district court's conclusions regarding the legal effect or operation of any agreement, however, are questions of law and therefore subject to plenary review. *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 665 (3d Cir. 1998).

We review the reasonableness of a district court's decision to award attorney's fees and prejudgment interest for abuse of discretion. *Lanni v. New Jersey*, 259 F.3d 146, 148 (3d Cir. 2001); *Brock v. Richardson*, 812 F.2d 121, 126 (3d Cir. 1987). Our review of a district court's determination as to which state's law applies to the calculation of a prejudgment interest award, however, is *de novo*. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007).

C.

On appeal, Hygrosol repeatedly and insistently claims that an unjust enrichment award was impermissible here because Hygrosol and Kontonotas had an enforceable and

binding Broker's Agreement that established how and under what conditions Kontonotas would be compensated. The existence of this agreement, Hygrosol argues, forecloses Kontonotas's extra-contractual equitable claim. However, Hygrosol fails to acknowledge that the District Court made a factual finding that the Broker's Agreement did not cover pharmaceutical products developed by Hygrosol with the aid of Kontonotas's brokering, and a written contract only precludes quasi-contract recovery "for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E. 2d 190, 193 (N.Y. 1987). We refuse to find clear error as to the District Court's interpretation of Hygrosol and Kontonotas's contract and, accordingly, we agree with the District Court's analysis as to the permissibility of an unjust enrichment claim here and with its ruling that Kontonotas fulfilled all the elements of that claim.

We also find that equitable tolling was properly applied here and that the District Court did not err in holding that Kontonotas's claim was timely. Finally, the District Court did not abuse its discretion in refusing Hygrosol's request for attorney's fees; section 2.2 of the Broker's Agreement has no application here, as this litigation did not arise out of "circumvention" as the term was defined in the agreement.

Regarding the District Court's prejudgment interest determination, we note that *Travelers Casualty & Surety Co. v. Insurance Co. of North America*, 609 F.3d 143 (3d Cir. 2010),[4] not *Yohannon*, controls. In *Travelers*, a breach of contract case in Pennsylvania federal court based on diversity jurisdiction, New York law governed the contracts in question. 609 F.3d at 148. We distinguished *Yohannon* and applied New

---

[4] *Travelers* was decided after the District Court issued its opinion in this case.

York's interest rate to calculate prejudgment interest, based on our prediction that the Pennsylvania Supreme Court would conclude that the rate of prejudgment interest is an issue of *substantive* law. *Id.* at 174. We make the same prediction in the context of a quasi-contract action. Therefore, we will remand to ask the District Court to reconsider its prejudgment interest determination in light of our conclusion that New York law governs calculation of the prejudgment interest rate.

D.

For the reasons set forth above, we affirm the District Court's January 26, 2010 order granting Kontonotas unjust enrichment relief and its March 16, 2010 order rejecting Hygrosol's claims that the statute of limitations had run and that it was entitled to attorney's fees.

We will vacate the District Court's February 23, 2010 order as to prejudgment interest and remand for further proceedings on this issue pursuant to *Travelers*.[5]

---

[5] We also note here that we are entering a separate order asking the parties to supply reasons for their ongoing request to keep the briefs and appendices in this case under seal. We have already asked them to provide support for their request, in a letter dated February 3, 2011, but their efforts at responding have fallen short. The parties are each given ten days from the entry of this order to show cause why the record should not be unsealed with specific redactions of classified material only. The parties should specifically identify which parts of the record need to remain under seal, and why. If they fail to do so or absent a showing of good cause, *see Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994), the Court will direct that the record be unsealed. *See United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) ("[W]hen there is an umbrella protective order 'the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order.'") (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986)); *Miller v. Indiana Hosp.*, 16 F.3d 549, 552 (3d Cir. 1994) (finding it "incumbent upon us to direct the district court to unseal the record" and explaining that

9

"we see no reason to maintain the impoundment" where "defendants have chosen not to appear to defend the district court's order [sealing the record], and the district court provided no findings as the basis for its decision.").