PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-1391

———————

PEDIATRIX SCREENING, INC.;
PEDIATRIX SCREENING, L.P.,
<u>Appellant</u>
v.

TELECHEM INTERNATIONAL, INC.,
t/a/d/b/a ARRAYIT.COM

———————

Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 01-cv-02226)
District Judge:  Honorable Joy Flowers Conti

———————

Argued December 15, 2009
Before:  SLOVITER, JORDAN and WEIS, <u>Circuit</u> <u>Judges</u>.

(Filed: April 20, 2010)

———————

Deena J. Schneider, Esquire (ARGUED)
Joseph J. Anclien
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103

Jeffrey G. Brooks, Esquire
MINTO LAW GROUP
603 Stanwix Street, Suite 2025
Pittsburgh, PA  15222

Mary-Jo Rebelo, Esquire
HOUSTON HARBAUGH, PC
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA  15222

Attorneys for Appellant

Kim M. Watterson, Esquire (ARGUED)
Barry J. Coyne, Esquire
Kevin S. Katona, Esquire
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219

Attorneys for Appellee

_____

OPINION
_____

2

WEIS, Circuit Judge.

This action grew out of business disputes marked by sharp disagreements over asserted trade secrets and contractual obligations. A jury resolved multiple issues leaving but one count which has been appealed. The principal questions before us are whether, under Pennsylvania law, a fraudulent misrepresentation is to be treated as a tort or breach of contract and whether that point has been properly preserved for our review. We conclude that the issue was not waived in the District Court and will remand for a new trial.

TeleChem International, Inc., a California corporation, provided technical assistance and hardware for use in microarray technology applicable in genetic screening or "genotyping." The process allows microscopic spots of DNA to be placed on glass slides for use in genetic research and testing.

Pediatrix Screening, Inc., a Pennsylvania corporation, was engaged in traditional methods of genetic screening of newborn infants.[1] The company became interested in applying for a research grant, but needed a collaborator with expertise in microarray technology. After preliminary discussions during a trade show attended by representatives of both entities, an

---

[1]In 2003, Pediatrix Medical Group, Inc., bought Neo Gen Screening, Inc., and Neo Gen Screening, L.P., the concerns that originally had contact with TeleChem. Pediatrix was, in turn, purchased by PerkinElmer, Inc. in March 2008. In the interest of simplicity, the parties will be referred to as "Pediatrix" and "TeleChem."

officer of Pediatrix wrote to TeleChem to arrange a meeting with personnel from the two companies. In that letter, Pediatrix set forth that the parties' joint efforts might ultimately lead to "a long-term mutually beneficial relationship[,]" which would require that "significant effort be made by both parties."

On February 7, 2000, Pediatrix sent a letter to TeleChem outlining a two-part proposal. During Phase One, TeleChem would assist Pediatrix in performing a "small pilot experiment" using microarray technology and in preparing a grant application to the National Institutes of Health. Phase Two was envisioned as a two-year study during which the parties would develop a microarray screening process for nearly a dozen genetic disorders. According to Pediatrix's letter, "[a]ll of these proposals are achievable in the short term and will lead to long term commitments and mutual benefits."

TeleChem responded on March 24, 2000, that it "fully accept[ed] and embrace[d]" the February 7 proposal "in the hopes that [TeleChem] will benefit from the residual commercial uses" arising out of the collaboration. Following the outline of Pediatrix's overture, TeleChem agreed that all grant money would go to Pediatrix and that TeleChem would forego a $500,000 subcontract. TeleChem further agreed to devote $1.5 million in like-kind commitments of personnel, research, use of capital equipment, and supplies and stated that

4

it would build Pediatrix a "clean room"[2] if necessary.[3] Pediatrix, with the support of TeleChem, secured the grants from NIH in August 2000 and commenced its research.

At a meeting in October 2000, Pediatrix presented TeleChem with a proposal for a joint corporation to be named NGS-ArrayIt and in December 2000, followed up with a suggested "Pre Incorporation Agreement." According to the draft, NGS-ArrayIt would be created to "engag[e] in and maintain[ ] a business which develops and sells microarray-based genetic tests for newborn screening and other diagnostic purposes." TeleChem would own 67% of the company's stock; Pediatrix would possess 33%.

The parties executed the Agreement on April 12, 2001,[4] promising to "cause the corporation to be formed . . . within thirty days." TeleChem signed the necessary incorporation papers and returned them to Pediatrix. However, Pediatrix did not file the documents with the appropriate authorities. Unaware of the omission, TeleChem continued to work with Pediatrix while touting NGS-ArrayIt at trade shows and providing additional promotional publicity.

-------

[2]A "clean room" is a sophisticated laboratory facility designed to provide an area free of contamination.

[3]This arrangement was labeled as "Contract One" in the District Court, and we will adopt that designation.

[4]The District Court designated this Agreement as "Contract Two." We will adopt that nomenclature.

5

On June 18, 2001, Pediatrix wrote to TeleChem with complaints about its performance. After correspondence and face-to-face meetings failed to resolve their differences, Pediatrix terminated the Pre Incorporation Agreement on July 24, 2001. TeleChem responded on August 21, 2001, that it "decline[d] [Pediatrix's] request to terminate the Pre-Incorporation Agreement" and would "continue to operate as NGS-ArrayIt, Inc. and in the best interests of NGS-ArrayIt, Inc."

In the months following this exchange, the parties discussed future collaborations and the development of a business plan. TeleChem, with Pediatrix's encouragement, continued working on the microarray project. However, on November 14, 2001, TeleChem gave notice that Pediatrix had breached Contract Two and demanded specific performance or return of consideration. Pediatrix filed this suit six days later, seeking declaratory relief and asserting breaches of Contracts One and Two.

TeleChem counterclaimed, requesting declaratory and injunctive relief as well as damages. In particular, TeleChem asserted a breach of Contract Two, as well as a number of claims sounding in tort, including fraudulent misrepresentation and misappropriation of trade secrets. TeleChem did not plead a breach of Contract One, but averred that Contract Two had memorialized what it dubbed the "Oral Agreement." Pursuant to that understanding, TeleChem was to "provide tools, skills and expertise . . . thereby enabling [Pediatrix] to qualify for and benefit from various research grants, while TeleChem would retain all commercial rights to any product developed."

6

Pediatrix moved to dismiss the counterclaims under Federal Rule of Civil Procedure 12(b)(6), asserting, <u>inter alia</u>, that TeleChem's tort counts were barred by Pennsylvania's "economic loss doctrine." Because that concept typically applied to products liability suits and was "remarkably similar" to Pennsylvania's "gist of the action" test,[5] the District Court applied the latter label. Observing that "caution should be exercised in determining the gist of an action at the motion to dismiss stage," the Court declined to dismiss the misrepresentation and other tort claims.

The "gist of the action" question apparently was not raised again until a June 7, 2007, pre-trial conference, shortly before the trial began, when the court requested counsel to submit points for charge. Addressing TeleChem as to which claims the jury should receive, the trial judge stated,

> "Count 3 is misrepresentation. And then, that brings to question, are you proceeding in [tort,][6] or are you proceeding in contract? This is the issue[ ] . . . what's [the] gist of the action. My sense is the gist of this action is contract, breach

---

[5]Throughout the litigation, the parties have used "gist of the action" and "economic loss" interchangeably. "Gist of the action" is a better fit, and we will use it in this opinion. <u>See</u> <u>Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.</u>, 247 F.3d 79, 104 n.11 (3d Cir. 2001).

[6]This was misspelled as "court" in the transcript.

7

> of contract.  So you'll need to tell me whether
> that's in or out."

TeleChem's counsel requested, and later was granted, an instruction listing the elements of a misrepresentation tort claim and a related damages charge.

At the conclusion of lengthy testimony, the case was submitted on special interrogatories.  The jury's responses set forth that:  (1) there were two contracts at issue; (2) TeleChem had breached Contract One, for which Pediatrix would receive only nominal damages; (3) both Pediatrix and TeleChem had breached Contract Two, resulting in a $1 million award in liquidated damages for each;[7] and (4) Pediatrix was liable for fraudulent misrepresentation, for which TeleChem was granted $500,000 in compensatory and $3.5 million in punitive damages.  In addition, the jury nullified the claims for asserted trade secrets.

After the District Court entered judgment, Pediatrix filed a motion under Federal Rule of Civil Procedure 59, seeking "Post Trial Relief and to Amend Judgment With Respect to Defendant's Counterclaim."  In that motion, Pediatrix argued that the evidence of record did not support the misrepresentation claim, the gist of the action doctrine barred TeleChem from recovering for misrepresentation, and the punitive damages award was unwarranted and excessive.

---

[7]For reasons not relevant to this appeal, Pediatrix was granted an additional $85,000 in accordance with the contract terms.  That award is not before us.

After the parties briefed the issues, the Court conducted a lengthy oral argument, during which the trial judge found that "the misrepresentation here was with respect to fraud in the inducement. There was no separate duty under . . . [Contract One] that would have required Pediatrix to actually commercialize the efforts on which they were collaborating."

The District Court later issued an order denying Pediatrix's Rule 59 motion, stating that "the fraudulent misrepresentation alleged by TeleChem did not concern the performance of contractual duties." In addition, the Court held that Pediatrix could not argue insufficient evidence, having failed to timely raise the issue. The damages awards were left undisturbed.

Pediatrix timely appealed, asserting that the District Court erred in failing to apply the "gist of the action" doctrine, that the punitive damage verdict was excessive, and that the recovery for misrepresentation was duplicative of the breach of contract award. TeleChem contends, inter alia, that Pediatrix waived its challenge to the misrepresentation claim by failing to ask for judgment as a matter of law as prescribed by Rule 50 and disputes that the damages were inappropriate.

**I.**

The jury's verdict and parties' arguments on appeal have effectively transformed the dispute from an action focusing primarily on whether Pediatrix had wrongfully appropriated asserted trade secrets into a judgment for damages in favor of TeleChem for misrepresentation on the part of Pediatrix. Before

9

we address the merits of Pediatrix's contention that the gist of the action doctrine precludes such an award, we must first consider the propriety of our review.

In <u>Unitherm Food Systems, Inc. v. Swift-Ehrich, Inc.</u>, 546 U.S. 394 (2006), the Supreme Court observed, significantly, that "the broad grant of authority to the courts of appeals in [28 U.S.C.] § 2106 [to 'affirm, modify . . . [or] reverse any judgment . . . brought before it for review'] must be exercised consistent with the requirements of the Federal Rules of Civil Procedure as interpreted by this Court." 546 U.S. at 402 n.4. In wielding our general statutory power of review, therefore, we are to take due account of the limitations and restrictions set forth in the Rules of Civil Procedure. The former practice of appealing directly from an adverse judgment in a jury trial[8] without filing post-trial motions in the district court has been altered, at least insofar as the movant requests judgment as a matter of law based on insufficiency of the evidence.

TeleChem argues that Pediatrix waived its challenges to the judgment for misrepresentation. Focusing at length on Rule 50 and the law governing the preservation of sufficiency of the evidence claims, TeleChem asserts that Pediatrix's failure to file pre- and post-verdict motions seeking judgment as a matter of

---

[8]<u>See</u> 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice & Procedure</u> § 2818 (2d ed. 1995) ("[A] party may assert on appeal any question that has been properly raised in the trial court. Parties are not required to make a motion for a new trial challenging the supposed errors as a prerequisite to appeal").

10

law under Rule 50 precludes our review of Pediatrix's arguments on appeal.

Under Rule 50, a party may move "for judgment as a matter of law . . . at any time before the case is submitted to the jury," and the court may enter judgment if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a). If the motion is not granted, it may be renewed "[n]o later than 10 days after the entry of judgment . . . and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b) (2008). The court may, on consideration of the renewed motion, enter judgment as a matter of law for the moving party, leave the jury's original verdict undisturbed, or order a new trial. Id. If a party seeks a judgment in its favor based on insufficiency of the evidence, he must file for judgment as a matter of law both before the case is submitted to the jury and after a verdict is returned. Unitherm, 546 U.S. at 401-07.

TeleChem contends that Pediatrix's failure to follow the dictates of Rule 50 waived any claim challenging the sufficiency of the evidence. In the circumstances before us,[9] the District

_____

[9]"Sufficiency of the evidence" is a chameleon-like term and must be considered carefully and in context. Although typically invoked in motions for judgment as a matter of law under Rule 50, a new trial may be granted under Rule 50 or 59 when deletion of erroneously admitted evidence resulted in insufficient evidence to support a verdict. See, e.g., Weisgram v. Marley Co., 528 U.S. 440, 451-52, 457 (2000) (reiterating

Court properly declined to enter judgment as a matter of law against TeleChem on that ground. See id. at 405. That conclusion, however, does not foreclose all post-trial and appellate relief available to Pediatrix, especially since it does not now contest the sufficiency of the evidence underlying the misrepresentation judgment.

Pediatrix filed a post-verdict motion purporting to be in accordance with Rule 59. The District Court was asked to "amend" the judgments, and Pediatrix specifically argued not only that the evidence failed to support the verdict for

holding in Neely v. Martin K. Eby Constr. Co., 386 U.S. 317 (1967), that appellate court may order new trial upon finding of insufficient evidence).

TeleChem cites Yohannon v. Keene Corp., 924 F.2d 1255 (3d Cir. 1991), as precluding our consideration of sufficiency of the evidence: "[T]he failure to move for a directed verdict . . . .[ i]n this circuit, wholly waives the right to mount any post-trial attack on the sufficiency of the evidence." Id. at 1262. We doubt that Yohannon's broad, total foreclosure, set forth in dicta, limits Rule 59 relief. See Weisgram, supra, 528 U.S. 440; see also Greenleaf v. Garlock, Inc., 174 F.3d 352, 365 (3d Cir. 1999) (party may seek new trial under Rule 59 on "weight of the evidence" notwithstanding failure to move for judgment as a matter of law pursuant to Rule 50). We need not resolve the issue, however, because Pediatrix does not now contest that there was evidence to support the jury's finding of deceit, but asserts that tort recovery was barred by the gist of the action, a legal defense.

12

misrepresentation, but also that the judgment for misrepresentation should be "stricken" as legally barred by the gist of the action doctrine.

Neither Rule 50 nor 59 contain the term "stricken." Rule 59, however, permits the court, on the motion of a party or <u>sua sponte</u>, to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Under the Rule, a party may also move to alter or amend a judgment. Fed. R. Civ. P. 59(e). A Rule 59 "motion to alter or amend judgment m[ay] rely on . . . the need to correct clear error [of law] or prevent manifest injustice." <u>North River Ins. Co v. CIGNA Reinsurance Co.</u>, 52 F.3d 1194, 1218 (3d Cir. 1995) (second alteration in original) (quotation marks and citation omitted).

Unlike Rule 50, the text of Rule 59 does not require any pre-verdict motions. Further, although <u>Unitherm</u> stated that "a party is not entitled to pursue a new trial on appeal unless that party makes an appropriate postverdict motion in the district court," 546 U.S. at 404, that case addressed an insufficient evidence challenge under Rule 50, and the Court specifically noted the absence of a Rule 59 motion. <u>Id.</u> at 398. Courts of appeals that have examined the issue generally have concluded that <u>Unitherm</u>'s holding is limited to Rule 50 and insufficiency of the evidence. They do not, with one exception, preclude the ability to review relief under Rule 59.[10]

---

[10]<u>See, e.g.</u>, <u>Van Alstyne v. Elec. Scriptorium, Ltd.</u>, 560 F.3d 199, 203 n.3 (4th Cir. 2009) (<u>Unitherm</u> inapplicable where defendants do not challenge sufficiency of the evidence); <u>Bryant</u>

13

TeleChem also observes that Pediatrix "did not challenge the fraud claim at any point during the trial" by objecting to its submission to the jury or requesting any "gist of the action" instruction. Those arguments miss the mark. The issue here is whether the misrepresentation claim, even if supported by sufficient evidence, is nevertheless precluded by the gist of the action doctrine.

That legal dispute is clearly set forth in Pediatrix's Rule 12(b)(6) motion, filed early in the litigation, to dismiss the tort counterclaims. The denial of that motion was not appealable until the District Court entered its final judgment. "[T]he general rule [is] that on appeal from a final judgment, all previously unappealable orders merge in the judgment and are subject to review." 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3901.1, at 9 (2d ed. 1992). That includes rulings under Rule 12(b)(6). See Murray v. Commercial Union Ins. Co., 782 F.2d 432, 434-

---

v. Dollar Gen. Corp., 538 F.3d 394, 398 n.2 (5th Cir. 2008) (Unitherm only addresses pre-verdict motions based upon the sufficiency of the evidence) (dicta); Fuesting v. Zimmer, Inc., 448 F.3d 936, 939 (7th Cir. 2006) (limiting Unitherm to "the situation of a litigant seeking a new trial on the basis of the insufficiency of the evidence"). But see Hi Ltd. P'ship v. Winghouse of Fla., Inc., 451 F.3d 1300, 1302 (11th Cir. 2006) (court had "no authority to consider" appeal where party failed to file post-verdict motions). See generally Steven Alan Childress, Revolving Trapdoors: Preserving Sufficiency Review of the Civil Jury After Unitherm & Amended Rule 50, 26 Rev. Litig. 239 (2007) (discussing implications of Unitherm).

35 (3d Cir. 1986) (grant of Rule 12(b)(6) motion appealable after final judgment entered); see also Pennbarr Corp. v. Ins. Co. of N. Am., 976 F.2d 145, 149 (3d Cir. 1992) (denial of summary judgment appealable after adverse verdict).

TeleChem was not ambushed by Pediatrix's post-trial argument concerning gist of the action, nor confronted by the reanimation of a lifeless corpse. The district judge specifically inquired at a pretrial conference whether the alleged misrepresentation was a breach of contract or a tort. TeleChem elected to treat the claim as a tort and was on fair notice that the gist of the action defense was still pending at that point. The legal issue was neither withdrawn nor transformed into a factual issue to be resolved by the jury.

As Judge Becker colorfully expressed in a similar circumstance, "[i]t would be unfair to . . . penalize [a party] for failing to jump up and down or labor an objection that the District Court had placed in the record." Bohler-Uddeholm Am., Inc. v. Ellwood Group, 247 F.3d 79, 109 (3d Cir. 2001). Nor would we require such calisthenics from Pediatrix when its objection had already been preserved for appeal.

The Rule 59 motion filed by Pediatrix was fully briefed by both parties and supplemented by the extensive oral argument in the District Court. Counsel explored such matters as the gist of the action, the contract as to which the misrepresentation occurred, whether the misrepresentation amounted to fraud in the inducement, what the evidence at trial had demonstrated, and whether either party had waived its contentions. In short, the parties presented a complete review of

15

the case, aided by the active and thoughtful participation of the district judge.

The Supreme Court advised courts of appeals to avail themselves of the benefit derived from a district court's post-verdict proceedings. See Unitherm, 546 U.S. at 401 & n.3. Given the length and breadth of the District Court's examination of the issues and the opportunities extended to both parties to present their arguments, we are satisfied that Pediatrix's gist of the action challenge was fully aired in the District Court and preserved for appellate review.

## II.

The principal issue on the merits is whether the Court erred in its disposition of the gist of the action question. Although that legal issue is tied to factual matters, Pediatrix does not now contest the sufficiency of the evidence as to commission of the misrepresentation but the legal ruling allowing tort recovery for conduct that arguably was a breach of contract.

Sounding in diversity jurisdiction, the misrepresentation claim and the gist of the action defense are governed by the substantive law of Pennsylvania. Although its Supreme Court has not expressly adopted the gist of the action doctrine, it recognized decades ago the difficulties inherent in allowing a party to proceed with both tort and contract claims for harm that arose in connection with a contractual relationship. See Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964) ("[t]o permit a promisee to sue his promissor in tort for breaches of contract

16

*inter se* would erode the usual rules of contractual recovery and inject confusion into our wellsettled forms of actions"). Such complications as statutes of limitations, damages, and standards of proof come to mind as differences that have long been established. Blurring the bright line between tort and contract could diminish confidence in the value of the negotiated instrument and deter private parties from entering into contracts.

The Pennsylvania Superior Court has "operated under the assumption that the gist of the action doctrine is a viable doctrine that will eventually be explicitly adopted by [the] state's High Court." Reardon v. Allegheny Coll., 926 A.2d 477, 486 (Pa. Super. Ct. 2007). We have embraced that view as well. Bohler-Uddeholm, 247 F.3d at 103-04.

The gist of the action "doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." eToll, Inc. v. Elias/Savon Adver., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002) (citation omitted). In some circumstances, "it is possible that a breach of contract also gives rise to an actionable tort[.] To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral." Id. (alteration in original) (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 829 (Pa. Super. Ct. 1992)). That the misconduct was fraudulent does not bar application of the gist of the action principle. Werwinski v. Ford Motor Co., 286 F.3d 661, 681 (3d Cir. 2002).

17

The Superior Court has held that fraud claims should be barred where they arose during the course of the parties' contractual relationship; where the allegedly fraudulent acts also were breaches of duties "created and grounded in the . . . contract[;]" and where the damages "would be compensable in an ordinary contract action[ and] thus, the claim would essentially duplicate a breach of contract action." eToll, Inc., 811 A.2d at 20-21. Where fraud claims are "inextricably intertwined" with the contract claims, the gist of the action is contractual, and the fraud claim should be dismissed. Id. at 21.

The test has been discussed in other cases as well, including Hart v. Arnold, 884 A.2d 316, 341 (Pa. Super. Ct. 2005) (dismissing fraud-in-the-performance claim because it "essentially duplicate[d] . . . breach of contract claim and [its] success . . . [wa]s wholly dependent on the terms of a contract"), and Pittsburgh Construction Co. v. Griffith, 834 A.2d 572, 584 (Pa. Super. Ct. 2003) (vacating award for conversion on gist of the action grounds where "tort and breach of contract claims [were] inextricably intertwined, the success of the conversion claim depending entirely on the obligations as defined by the contract"). Compare Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 719 (Pa. Super. Ct. 2005) (separate fraud claim not barred when defendant "fraudulently . . . agreed to perform obligations that it never intended to perform in order to induce" plaintiff into entering into contract).

To determine whether the gist of the action applies to this case, we begin by examining the "misrepresentation" that TeleChem alleges. The record on this point, however, is vague and unsettled.

18

TeleChem's requested instruction on misrepresentation was delivered to the jury unchanged. It read: "TeleChem alleges that Pediatrix fraudulently misrepresented that TeleChem would benefit commercially from a grant collaboration." However, in closing remarks to the jury, TeleChem argued,

> "We believe that the evidence shows that Pediatrix intentionally deceived TeleChem into collaborating with it on the grant work for single patient [array] initially in return for commercial benefit, and also for entering into the agreement in the joint venture giving its multi-patient microarray technology to that joint venture under license for the expectation to get commercial benefit."

In its answering brief on the Rule 59 motion, TeleChem's characterization of the misrepresentation was, once again, more limited. There, TeleChem asserted that Pediatrix "misrepresented" its "commit[ment] to commercializing the grant research and that TeleChem could receive all of the commercial benefit resulting from the grant work." But, during oral argument on the motion, TeleChem appears to have asserted that the misrepresentation was not about the benefits of commercialization. Counsel described the deceit as Pediatrix's representation that the technology

> "would be commercialized, not that [TeleChem] would get the benefit from the commercialization, but that the microarray technology would be commercialized. That's the fundamental

19

misrepresentation throughout, frankly, the whole case, throughout the whole relationship between the parties . . . . It began first with the single patient microarray technology that was the subject matter of the grant collaboration [Contract One]."

Finally, in its brief on appeal, TeleChem states that the

"fraud did not concern the performance of the contracts between the parties, but rather its inducement of TeleChem to enter into a relationship in the first place. The evidence showed that Pediatrix represented that it intended to enter into a long-term profitable business relationship with TeleChem and that these representations – both at the outset of the relationship and throughout the parties' dealings – induced TeleChem to enter into the relationship . . . ."

There is a difference, then, between the misrepresentation submitted to the jury and the deceit espoused post-verdict by TeleChem.

The District Court noted the jury's finding that "there was a fraudulent misrepresentation . . . . related to the grant collaboration [Contract One]. That's clearly what is set forth in the final charge." Moreover, the Court pointed out during argument,

"What is Contract No. 1 is what I was trying to pin down[?] . . . If . . . [TeleChem] could then later go and have the use of the commercialization for it, that's one thing. But if it's a misrepresentation so that [TeleChem] would turn over these things and forego the $5 million that they could have received otherwise, that's a different misrepresentation."

Ultimately, the Court concluded that "the misrepresentation here was with respect to fraud in the inducement. There was no separate duty under the oral contract relating to the grant collaboration [Contract One] that would have required Pediatrix to actually commercialize the efforts on which they were collaborating." Those findings, however, do not resolve the gist of the action issue. That test, as its name suggests, requires the court to focus on the substance of the dispute, or, more colloquially, to ask the question, "What's this case really about?" The doctrine deals less with specific enumerated "duties" than with the parties' conduct as it relates to the contract and the tort alleged. See eToll, 811 A.2d at 21 (where "fraud claims [were] inextricably intertwined with the contract claims[,]" gist of the action was in contract).

There remains for consideration, then, whether the fraud in the inducement was collateral to Contract One and, moreover, whether the parties ever incorporated the misrepresentation into the terms of either contract. Also uncertain is whether the misrepresentation was inextricably intertwined with the parties' actions in carrying out the collaboration efforts. As in Bohler-Uddeholm, we cannot determine whether the judgment on the

21

misrepresentation was "properly grounded on actions outside the scope of the [a]greement." 247 F.3d at 107. There is simply too much uncertainty surrounding the "misrepresentation" on this record to determine whether the gist of the action was in tort or contract.

We recognize that counsel and the district judge faced less than ideal conditions throughout the litigation. Both parties obtained new counsel on several occasions, and the trial was conducted by the third judge in a series of necessary, though unfortunate, reassignments.

The record illustrates that the main focus of the complex litigation was the alleged misappropriation of trade secrets and the breaches of Contract Two. The jury was asked to answer 59 interrogatories, including subparts on such technical questions as whether "any of the following is a trade secret[:] . . . . Oligonucleotide designs with melting temperatures falling within a narrow window for multi-patient genotyping." It is not unexpected that even with the efforts of all concerned, too many loose ends and unanswered questions remain to resolve the gist of the action issue.

The district judge, at the conclusion of argument on Pediatrix's Rule 59 motion, remarked, "If it [gist of the action] hasn't been waived, I think it's a ground for a new trial and the case should be remanded." Finding no waiver, we will direct the grant of a new trial limited to the counterclaim for misrepresentation. We decline to rule on the compensatory and punitive damages issues at this stage because they may become

22

moot or otherwise affected by additional factual circumstances brought to light on remand.

*Pediatrix Screening, Inc. v. Telechem*, No. 08-1391
JORDAN, *Circuit Judge*, dissenting.

Because I believe that the gist of the action argument raised by Pediatrix is effectively a challenge to the sufficiency of the evidence supporting the jury verdict, I necessarily conclude that Pediatrix has waived that challenge by failing to move for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. Accordingly, I respectfully dissent on the issue of waiver.

As the majority correctly points out, a party on appeal may not mount an attack on the sufficiency of the evidence if that party has failed to file a motion for judgment as a matter of law pursuant to Rule 50(a) before the case is submitted to the jury, and pursuant to Rule 50(b) after the verdict. *See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 407 (2006) ("[W]e hold that since respondent failed to renew its preverdict motion as specified in Rule 50(b), there was no basis for review of respondent's sufficiency of the evidence challenge in the Court of Appeals."); *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1262 (3d Cir. 1991) ("In this Circuit, [failure to move for judgment as a matter of law at the close of all the evidence] wholly waives the right to mount any post-trial attack on the sufficiency of the evidence."). The Supreme Court in *Unitherm* made it particularly clear that an appellate court may not entertain an argument about the sufficiency of the evidence if the party seeking relief has not previously filed a Rule 50 motion in District Court. 546 U.S. at 403-04.

The majority suggests that the gist of the action argument has not been waived in this case because Pediatrix raises a legal defense as opposed to a factual issue. However, a Rule 50

motion may very well be required when a legal question depends on the resolution of factual issues, such that the legal question cannot be resolved without reference to the evidence amassed at trial. *Cf. Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 720 (7th Cir. 2003) ("[I]f the legal question can be separated from the factual one, then we see no bar to reviewing the legal question notwithstanding the party's failure to raise it in a motion for judgment as a matter of law at trial."); *United Techs. Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338 (Fed. Cir. 1999) ("A denial of a motion for summary judgment may be appealed, even after a final judgment at trial, if the motion involved a purely legal question and the factual disputes resolved at trial do not affect the resolution of that legal question."). Although the gist of the action question is a legal one, *see eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 15 (Pa. Super. Ct. 2002) ("The question of whether the gist of the action doctrine applies is an issue of law ... .), it often requires a fact-intensive analysis as to the true nature of a claim, as is the case here, *see Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 418 (E.D. Pa. 2006) (acknowledging that "whether tort and contract claims are separate and distinct can be a factually intensive inquiry" (quotations omitted)).

Pediatrix's gist of the action challenge appears to me to be nothing more than a tardy Rule 50 motion dressed up in Rule 59 garb.[1] Instead of a discussion of legal distinctions between

---

[1]Calling its late effort a "motion for post trial relief to amend judgment with respect to [TeleChem's] counterclaims," Pediatrix argued to the District Court that the judgment on the

contract and tort claims, Pediatrix's argument deals repeatedly and at length with how the evidence at trial failed to establish any tort liability, focusing on the trial testimony of TeleChem's representatives, the expert testimony on damages, and documents admitted into evidence at trial. (*E.g.*, Appellants' Op. Br. at 30 ("[TeleChem] presented no evidence to support any alleged misrepresentation outside of [the parties'] contracts."); *id.* at 33 ("TeleChem's own documents and testimony showed that the grant work arrangement also promised that it would receive the commercial benefit of any technology resulting from Pediatrix's research."); *id.* at 35 ("TeleChem's evidence, therefore, was that both contracts promised TeleChem that it would receive commercial benefit from the technology. Its misrepresentation claim was based on precisely the same promise.").)

Accordingly, it seems that Pediatrix is really saying that it is entitled to judgment in its favor on TeleChem's fraudulent misrepresentation counterclaim because there was insufficient evidence at trial to establish any fraud independent of the parties' contractual relationship. That is an argument that could have, and should have, been raised at trial. Because it was not, it has been waived. *See Yohannon*, 924 F.2d at 1262 (failure to move for judgment as a matter of law waives any attack on the sufficiency of the evidence). This is not a hypertechnical

_____

misrepresentation counterclaim "must be stricken" because "the misrepresentation counterclaim is incorporated into [the] contract counterclaim ... ." (App. at 1010a.) Likewise, on appeal, Pediatrix argues that the judgment cannot stand because it is barred by the gist of the action.

3

application of the rules of procedure. It is a recognition that what Pediatrix is actually complaining of has less to do with what cause of action rightly fits the facts and more to do with what the facts are at all. Pediatrix cannot circumvent its obligation to file a Rule 50 motion by styling its post-trial motion as a motion to amend the judgment or otherwise seeking to "strike" the judgment, when what it really argues for is judgment as a matter of law due to insufficient evidence.[2]

Given my views on this point, were I writing for the court, I would address Pediatrix's other challenges to the jury

---

[2]Even leaving the Rule 50 issue to the side, I am not convinced that Pediatrix adequately preserved its defense. The majority has rightly noted that Pediatrix raised the gist of the action doctrine in a Rule 12(b)(6) motion (Pediatrix actually moved to dismiss pursuant to the economic loss doctrine, but I agree with the majority that the gist of the action doctrine may better characterize the argument) and that the District Court *sua sponte* raised the defense at a conference about three weeks prior to trial. However, Pediatrix's silence in the face of TeleChem's requested jury instruction on the elements of misrepresentation might alone be sufficient to waive the gist of the action defense, regardless of the Court's *sua sponte* identification of the issue shortly before trial. In fact, contrary to the majority's suggestion that we would be requiring "calisthenics" from Pediatrix by insisting on some indication that it still sought to pursue that defense (Majority Op. at 19), the District Court's inquiry about the gist of the action indicated that the defense was still viable if Pediatrix simply did something, practically anything, to pursue it.

4

verdict, namely, whether the damages on TeleChem's misrepresentation counterclaim are duplicative of the damages TeleChem received on its contract counterclaim and whether the punitive damages award is excessive and hence in violation of due process. However, in light of the majority's disposition of the appeal, there is no need to address those issues, and I write solely to state my view that Pediatrix failed to preserve the gist of the action defense it raises now.