**NON PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1216
_____

JOSEPH DOWNS, THOMAS DUNKEL;
USMR FUND 2, OAKMONT NOTE GROUP, LLC,
                                                            Appellants

v.

PETER J. ANDREWS, INDIVIDUALLY; GREGORY PALMER, INDIVIDUALLY;
2012 1 JV HOLDINGS LLC; PETER ANDREWS;
GREGORY PALMER, d/b/a Dreambuilders Investments, LLC
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(Case No. 2-13-cv-05788)
District Judge: Hon. Mary A. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
January 26, 2016
_____

Before: JORDAN, VANASKIE, and SHWARTZ, Circuit Judges.
(Filed: February 10, 2016)

_____

OPINION*
_____

SHWARTZ, Circuit Judge.

_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Joseph Downs, Thomas Dunkel, USMR Fund 2, and Oakmont Note Group LLC (collectively, "Plaintiffs") brought suit against 2012 1 JV Holdings LLC, Peter Andrews, Gregory Palmer d/b/a Dreambuilders Investments LLC, and Gregory Palmer (collectively, "Defendants") for common law fraud and conspiracy and concert of action in the commission of fraud. **App. 39-46.** The District Court dismissed Plaintiffs' complaint under the "gist of the action" doctrine pursuant to Fed. R. Civ. P. 12(b)(6) and for failure to join a party under Fed. R. Civ. P. 19. **App. 5-29.** Plaintiffs urge us to remand to the District Court for its consideration of Bruno v. Erie Ins. Co., 106 A.3d 48 (Pa. 2014), a Pennsylvania Supreme Court decision addressing the gist of the action doctrine that was published days before the District Court ruled. For the reasons that follow, we will affirm.

I[1]

The parties buy and sell mortgage notes. **App. 41.** In previous transactions, Defendants Andrews and Palmer, through their companies Dreambuilders and JF Holdings, purchased mortgage notes from banks and other institutions, and sold them to buyers such as Plaintiffs Downs and Dunkel, through Plaintiffs' company Oakmont, **App. 41,** who could then collect on the notes or resell them for a profit.

---

[1] In reviewing an order granting a Rule 12(b)(6) motion, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). We may generally consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," along with "document[s] integral to or explicitly relied upon in the complaint." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citation and quotation marks omitted).

In March 2012, Plaintiffs and Defendants discussed the purchase of a group of 171 mortgage notes (the "notes") at a discount, if Plaintiffs provided full payment of approximately $740,000 in advance of the sale.[2]  Defendants claimed they needed the money to complete the purchase, which was part of a much larger block of loans.  **App. 42.**  Interested in the opportunity but lacking access to that amount of cash, Downs and Dunkel entered into a verbal agreement with a third party, Remar Investments LP, to advance the entire $740,000.  **App. 42.**  Remar's investment was contingent upon several terms, including Downs and Dunkel personally guaranteeing the investment and that Remar be listed as the notes' initial purchaser, to eventually be assigned to a newly created LLC, USMR Fund 2, of which Remar would own 51% and Downs and Dunkel, through Oakmont, would own 49%.  **App. 42.**

After Remar wired the funds necessary for the purchase, Defendants timely delivered the first fifty-nine notes.[3]  **App. 43.**  The remaining 112 notes were slated for delivery five days later, but did not arrive on time.  **App. 43-44.**  According to the complaint, only $399,000 of the notes have been delivered.  **App. 44.**

Plaintiffs filed suit in the Eastern District of Pennsylvania in Oakmont's name only.  **App. 326.**  Their initial complaint was dismissed without prejudice for lack of subject matter jurisdiction.  Plaintiffs re-filed their suit, making largely the same

---

[2] Without the discount Defendants offered, the notes would have cost $979,000. **App. 42.**

[3] Although Plaintiffs concede that the first group of notes was delivered on time, they allege that "35 of the 59 loans . . . were unenforceable either because the loans lacked the necessary documentation or some other fundamental deficiency."  App. 44.

3

allegations, and adding Downs and Dunkel individually and USMR Fund 2 as plaintiffs, but omitting Remar. **App. 39-46.**

Defendants filed a motion to dismiss for, among other things,[4] failure to state a claim and failure to join a party under Rule 19, pursuant to Fed. R. Civ. P. 12(b)(6) and (7), respectively.[5] **App. 56-93.** The District Court granted Defendants' Rule 12(b)(6) motion because their claims were barred by the gist of the action doctrine.[6] **App. 25-29.** The District Court found that the "heart" of Plaintiffs' claims was "that the [D]efendants did not deliver the enforceable mortgage notes that the plaintiffs were due under the

---

[4] Defendants also sought dismissal based upon a lack of personal jurisdiction and improper venue. The District Court held that it had both subject matter and personal jurisdiction over the case and parties, and that venue was proper in the Eastern District of Pennsylvania. **App. 11-20.** No party appeals these rulings.

[5] The District Court held that Remar was a necessary party under Rule 19(a)(1)(B), because: (1) Remar was a party to the initial contract, and (2) it was unclear the extent to which Remar had assigned its obligations to Plaintiffs. **App. 22-24.** As a result, the District Court found that Remar's absence would "leave an existing party subject to a substantial risk of incurring . . . multiple . . . inconsistent obligations because of the interest," Fed. R. Civ. P. 19(a)(1)(B), and for this additional reason, dismissed the complaint. **App. 22.** Based on the record before the District Court, there is no indication that Remar is a citizen of either New York or New Hampshire, the states where Defendants reside. **See App. 12 (Defendants are citizens of New York and New Hampshire); see also D.C. ECF No. 34-6 (affidavit of Daniel Miller, Remar principal, stating that Remar Holdings, LLC is a California LLC, which is the general partner of Remar Investments LP, a Nevada partnership).** While we understand the District Court's frustration with Plaintiffs' failure to provide additional information, it appears that, even if joined, Remar's presence would not destroy diversity. Therefore, we need not address the Rule 19 ruling to satisfy ourselves we have subject matter jurisdiction. Moreover, because we affirm the District Court's dismissal based on the gist of the action doctrine, we need not address whether the dismissal under Rule 19 was proper.

[6] The District Court discussed the gist of the action doctrine under both Pennsylvania and New York law. Although Defendants appear to have argued that New York law applied based on a choice of law provision in their contract with Plaintiffs, no party argues before us that New York law is controlling.

contract and the subsequent . . . assignment." App. 28. As a result, the District Court concluded that Plaintiffs' claims sounded in contract, not tort, requiring dismissal under the gist of the action doctrine. **App. 28-29**. The District Court reached this conclusion without addressing the Pennsylvania Supreme Court's decision in Bruno, published three days before the District Court issued its opinion in this case. **See App. 5; see also Bruno, 106 A.3d at 48.**

Plaintiffs appeal, arguing that the District Court's failure to consider the Bruno decision necessitates remand for further consideration.

II[7]

Plaintiffs contend that the District Court failed to adequately analyze the "nature of the duty alleged to have been breached," as required by Bruno. Bruno, 106 A.3d at 68; **See Appellants' Br. 18.** This argument is unavailing. Although the District Court did not address Bruno, its analysis was consistent with that opinion.

The gist of the action doctrine provides that a tort claim "based on [a] party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action . . . although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." Id. at 53. Thus, to evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because "the nature of the duty alleged to have been breached . . . [is] the

---

[7] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over an order granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011).

critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." Id. at 68. "In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort . . . is not controlling." Id. Put simply, consistent with Bruno and its predecessors,[8] to determine whether an action is barred by the gist of the action doctrine, we must examine the factual allegations and ask, "[w]hat's this case really about?" Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 550 (3d Cir. 2010).[9]

This case is about Defendants' alleged failure to fulfill their contractual promises to deliver all of the purchased notes. Even though Plaintiffs allege that the delivery did not occur "because the outstanding notes were never owned by Defendants and [which they] fraudulently represented as being owned or controlled," App. 44, and "Defendants do not have the funds fraudulently procured or the notes promised having used the funds

---

[8] Most notable among these prior cases was eToll, Inc. v. Elias/Savion Advert., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002), which applied the gist of the action doctrine to fraud cases. eToll held that a tort claim is subject to the gist of the action doctrine if it arises solely from the contract between the parties, where the duties allegedly breached were based in the contract itself, where "liability stems from a contract," or where the claim is essentially a duplication of a breach of contract claim or the success of a claim is entirely dependent, and hence "inextricably intertwined" with the contract's terms. Id. at 19, 21. The Bruno court read eToll's "inextricably intertwined" language narrowly, affirming its applicability only insofar as it could be viewed in the context of determining "whether the nature of the duty upon which the breach of contract claims rest is the same as that which forms the basis of the tort claims." Bruno, 106 A.3d at **68-69,** 69 n.17.

[9] Plaintiffs present additional material in their brief and appendices, including emails between the parties and information about a case filed in another district. **See Appellants' Br. 33-40.** In accordance with Rule 12(b)(6), we limit our analysis to the facts as alleged in the complaint, its attached exhibits, and documents integral to or explicitly relied upon in the complaint. See Skolas, 770 F.3d at 249.

and notes to perpetuate an on-going Ponzi scheme," App. 45, the obligation to perform was the result of the contract. See Bruno, 106 A.3d at 69-70 (holding that the claim was not barred, in part, because it was not founded on the breach of any specific executory promise contained in the contract). Thus, regardless of Plaintiffs' assertions about why the notes were not delivered, the crux of their action is that Defendants failed to deliver the notes as required under the contract, and hence, "the duty breached is one created by the parties by the terms of their contract." Id. at 68 (when facts establish that "the duty breached is one created by the parties by the terms of their contract," the claim "is to be viewed as one for breach of contract").

Like the Bruno court, the District Court appropriately focused on the nature of the duty alleged to be breached, not merely on whether the contractual duties were sufficiently intertwined with the alleged torts. It explicitly held that "[t]he heart of the plaintiffs' fraud claim . . . is that the defendants did not deliver the enforceable mortgage notes," which "violated an obligation created by contract, rather than by 'the larger societal policies embodied in the law of torts.'" App. 28 (quoting Bohler-Uddeholm Am. Inc. v. Ellwood Grp. Inc., 247 F.3d 79, 104 (3d Cir. 2001)). Because the District Court examined the gist of the action doctrine consistent with Bruno, and reached the correct outcome, there is no need for remand.

Plaintiffs cannot rescue their claim by attempting to cast their complaint as one alleging breach of a different duty, such as fraud in the inducement or misrepresentation regarding how their money would be used. Pennsylvania state and federal courts have reached different conclusions about whether the gist of the action doctrine applies to

7

fraudulent inducement claims.  Compare Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 719 (Pa. Super. Ct. 2005) (allowing claim for fraud in the inducement to proceed where defendant allegedly agreed to perform obligations it had no intention to perform to induce a change in the contract) with Vives v. Rodriguez, 849 F. Supp. 2d. 507, 518-20 (E.D. Pa. 2012) (collecting cases and holding a fraudulent inducement claim barred by the gist of the action doctrine); see Wen v. Willis, --- F. Supp. 3d. ---, 2015 WL 4611903, at *5 (E.D. Pa. 2015) ("[W]here the precontractual statements that are the basis for the fraudulent inducement claim concern specific duties that the parties later outlined in the alleged contract," the claim may be dismissed under the gist of the action doctrine) (quoting Integrated Waste Sol'ns, Inc. v. Goverdhanam, No. 10-2155, 2010 WL 4910176, at *11 (E.D. Pa. Nov. 30, 2010)).  However, we need not decide whether fraud in the inducement claims are categorically barred under the gist of the action doctrine because the pleadings demonstrate that this case is about a failure to perform under the contract.  Plaintiffs' complaint demonstrates that the primary basis for alleging that fraudulent activity induced the contract is the fact that the notes were not all delivered in accordance with the contract, not a failure to fulfill a separate societal duty which may exist in other cases.  Similarly, the allegation that Plaintiffs' funds were used for transactions unrelated to purchasing the notes simply underscores the conclusion that Plaintiff's claim that the Defendants failed to hold up their end of the bargain.  **See App. 45-46.**

Because the "nature of the duty" alleged to be violated arises out of Defendants' contractual promises to deliver the notes, and not a broader social duty, see Bruno, 106

A.3d at 68, we will affirm the District Court's dismissal of the complaint pursuant to the gist of the action doctrine.

III

For the foregoing reasons, we will affirm the order of the District Court.

*Joseph Downs, et al. v. Peter J. Andrews, et al.*, No. 15-1216
JORDAN, *Circuit Judge*, concurring in the judgment.

To affirm the District Court on Rule 12(b)(6) grounds, my colleagues in the Majority read the Plaintiffs' Complaint narrowly to avoid the unsettled legal question of whether Pennsylvania's gist of the action doctrine permits a fraudulent inducement claim when the defendant's supposed misrepresentation was that it intended to perform the duties established in the contract although it in fact never so intended.[1]  I agree that we need not reach that question, but the reason it should be avoided is that the District Court provided an alternative and more straightforward basis to dismiss the Complaint, namely that dismissal was warranted under Rule 12(b)(7) for failure to join an indispensable party under Rule 19.  Because the District Court was correct that this case is potentially

---

[1] As the Majority indicates, when reviewing an order granting a Rule 12(b)(6) motion, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal citation omitted).  Reading the Complaint most favorably to the Plaintiffs, I believe that they have pled that they were induced to enter the transaction by the Defendants' misrepresentation of an intent to perform on the sale.  Specifically, the Plaintiffs say that (1) "Defendants ... falsely induced [them] to advance $740,000 based on false statements that the advance would be used to purchase a discreet group of enforceable loans known as NSP-0234," (App. 44 ¶ 50), (2) Defendants "knew at the time they induced [Plaintiffs] to provide the $740,000 that the statements were false," (App. 45 ¶ 51), and (3) Defendants "did not intend to use the $740,000 to purchase NSP-0234 ... but intended to use those funds and did in fact use those funds to conduct a different transaction," (App. 45 ¶ 52).  The Plaintiffs also allege that a significant portion of the purchase was never delivered so that the Defendants did not, in fact, perform.  Therefore, the Plaintiffs appear to claim that the Defendants induced them to enter the transaction without ever intending to perform.  To affirm on Rule 12(b)(6) grounds, we would thus have to resolve whether Pennsylvania's gist of the action doctrine precludes fraudulent inducement claims based on misrepresentations of intent to perform.

1

missing an essential party, who may upset complete diversity, I would affirm on that ground rather than reaching the merits.

As the Majority indicates, the party that actually purchased the notes from the Defendants was not any of the Plaintiffs in this suit, but rather an unjoined party, Remar Investments, LP ("Remar"). In fact, the contract that was supposedly fraudulently induced does not include any of the Plaintiffs as parties. Rather, it was between Remar and Defendant JV Holdings, LLC. After receiving the mortgage notes from JV Holdings, Remar was to assign them to Plaintiff USMR Fund 2, in which Remar would own a majority share. The Plaintiffs allege that USMR Fund 2 is now completely owned by Oakmont Note Group, LLC ("Oakmont"), which is in turn completely owned by Downs and Dunkel.[2] They also claim that Remar has assigned all rights in the mortgage notes to USMR Fund 2. Based on those facts and averments, the District Court was concerned that Remar was an indispensable party to this litigation, and I share that concern.

In reviewing the District Court's Rule 12(b)(7) analysis, we employ a generally deferential standard.

> To the extent a district court's Rule 19(a) determination is premised on a conclusion of law, this court's review is plenary. Findings of fact are reviewed for clear error. This court reviews for abuse of discretion a district court's Rule 19(b) determination that a party is indispensable and that dismissal is required because the party's joinder would destroy subject matter jurisdiction.

---

[2] Specifically, the Plaintiffs allege in their Complaint that "Oakmont owns 100% of USMR 2," (App. 40 ¶ 6), and that "Plaintiff Downs owns 50% of Oakmont and 50% of USMR 2 while Plaintiff Dunkel owns 50% of Oakmont and 50% of USMR 2," (App. 39 ¶ 5). Read literally, the allegations about the ownership interests in USMR Fund 2 add up to 200%. I infer that the Complaint means to allege that Downs and Dunkel each own half of Oakmont, which in turn owns all of USMR Fund 2.

2

*Huber v. Taylor*, 532 F.3d 237, 247 (3d Cir. 2008) (citation omitted).

The District Court properly engaged in the necessary two-step analysis for evaluating whether a party is indispensible under Rule 19. A court "first must determine whether the absent [parties] should be joined as 'necessary' parties under Rule 19(a). If they should be joined, but their joinder is not feasible inasmuch as it would defeat diversity of citizenship ... , [a court] next must determine whether the absent parties are 'indispensable' under Rule 19(b)." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007).

In this case, the District Court determined that Remar was a necessary party under Rule 19(a)(1)(B), which makes a party necessary if that person "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may ... leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). It is undisputed, as observed by the District Court, that "Remar is a party to the contract underlying the plaintiffs' claims." (App. 22.) In evaluating the Plaintiffs' proffered "assignment" of Remar's rights,[3] the Court concluded that "[i]t is not clear ... that Remar actually assigned all of its rights and interests in the subject of this action," as the supposed assignment "makes no mention of an assignment of Remar's

---

[3] The record contains a document titled "Assignment of Promissory Notes," in which Remar purportedly assigned to USMR Fund 2 "all rights ... and all interest due" on the "171 promissory notes" from the Loan Sale Agreement between JV Holdings and Remar. (App. 241.) The District Court correctly observed, however, that the document does not address any other rights, such as contract or tort claims, arising from the transactions at issue in this case.

rights under the contract itself, or of an assignment of any fraud claim that Remar might have against defendants." (App. 23.) Moreover, the Court determined that "Remar refused to grant the defendants a full release from liability, indicating that Remar may indeed institute some action against the defendants in the future." (App. 25.) Accordingly, the District Court found that Remar was a necessary party. In the Court's words, it could not "see how it [could] allow the case to go forward without Remar; the risk of prejudice to the defendants is too great." (App. 25.)

The Plaintiffs contend that Remar is not a necessary party because it "has no interest in USMR Fund 2, other than" its rights under voting trust and commercial security agreements and as trustee of USMR Fund 2. (Opening Br. at 39.) But the voting trust agreement cited by the Plaintiffs indicates that Remar remains a trustee of "one hundred percent ... of the ... membership interests in USMR Fund 2 LLC," suggesting that it may still retain an interest in USMR Fund 2 and the mortgage notes. (App. 261.) The Plaintiffs also argue that they "were personally liable to Remar for the entire $740,000 under a handshake deal" and that they had in fact paid Remar in full. (Opening Br. at 39.) But they cite no evidence for those assertions, which run headlong into the District Court's finding that the Plaintiffs did not "produce[] any evidence of the alleged indemnification" of Remar nor any evidence that they "would indeed be able to indemnify Remar for any losses Remar suffered." (App. 23.) I therefore see no basis to upset the District Court's factual findings, which sufficiently support its conclusion that Remar was a necessary party.

That opens the second part of the Rule 19 analysis, determining whether joinder is feasible. The Plaintiffs suggest that, if Remar is a necessary party, it could simply be joined by the Court under Rule 19(a)(2), but they provide no reasoning to support the claim that joinder would be feasible. The District Court rightly noted that, "[d]espite over two years of litigation ... the plaintiffs have not established the citizenship of Remar." (App. 24.) The primary evidence before the District Court on the Rule 12(b)(7) motion was an affidavit from Remar's principal averring that Remar's general partner was Remar Holdings, LLC, a California limited liability company. Even if we were to credit that affidavit, however, it provides just enough information to know that we need much more to determine Remar's citizenship – namely the identities of Remar's limited partners and the members of Remar Holdings. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990) (holding that a limited partnership's citizenship depends upon the citizenship of both its general and limited partners); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) ("[T]he citizenship of an LLC is determined by the citizenship of its members.").[4] Given the Plaintiffs' ongoing intransigence in declining to provide the information necessary to determine Remar's citizenship, the District Court did not abuse its discretion in determining that joinder was not feasible.[5]

---

[4] "[A]s with partnerships, where an LLC has, as one of its members, another LLC, the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be to determine the citizenship of the LLC." *Zambelli Fireworks*, 592 F.3d at 420 (internal quotation marks omitted).

[5] The Plaintiffs' vague response with regard to Remar's citizenship seems characteristic. In the first iteration of this suit (dismissed for lack of subject-matter jurisdiction), the District Court ordered the Plaintiffs to provide information "regarding

5

Based on its conclusions that Remar was a necessary party to avoid prejudice to the Defendants, and that Remar's citizenship for diversity purposes was indeterminate, the District Court acted reasonably within its discretion in ruling that Remar was an indispensible party that could not be feasibly joined.  Dismissal was thus proper under Rule 12(b)(7).

Accordingly, I would affirm the District Court's dismissal order on Rule 19 grounds rather than reach the merits of the gist of the action dispute.  I therefore concur in the judgment of the Court.

---

Remar's partners and their citizenship." (*Oakmont Note Group LLC v. Andrews*, No. 2:12-cv-05257-MAM (E.D. Pa.), ECF No. 59).  The Plaintiffs' substantive response was an affidavit similar to the one filed in this case, there averring that Remar was "administered by Remar Holdings LLC, a Nevada limited liability company, and owned in part by an individual residing in California, a California Revocable Family Trust, and a Nevis limited liability corporation." (*Id.* at ECF No. 60-6).  That did little more than point out how much more information would be necessary to determine Remar's citizenship – namely, the membership of Remar Holdings LLC, the legal domicile of the California resident, the trustee of the revocable family trust, and the membership of the Nevis LLC.